UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KATIE N. BOGGEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 72 DDN |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Katie N. Boggeman for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is reversed and the case is remanded.

## BACKGROUND

Plaintiff was born on July 5, 1983. She protectively filed her application for Title II benefits on November 29, 2016. (Tr. 10, 20.) She alleged a disability onset date of November 23, 2016, due to fibromyalgia, interstitial cystitis, irritable bowel syndrome, costochondritis, sleep apnea, depression, anxiety, bilateral carpal tunnel syndrome following surgery, and degenerative disc disease of the lumbar spine. (Tr. 12, 150, 165.) Plaintiff's application was denied initially on April 17, 2017. (Tr. 77.) Plaintiff appealed the decision and requested a hearing by an administrative law judge ("ALJ").

On October 22, 2018, plaintiff appeared before an ALJ. (Tr. 27-62.) A vocational expert ("VE") also testified at the hearing. (*Id.*) On January 3, 2019, the ALJ denied

plaintiff's application.  (Tr. 10-21.)  The Appeals Council denied plaintiff's request for review.  As a result, the ALJ's decision stands as the final decision of the Commissioner.  20 C.F.R. § 404.984(b)(2) (Tr. 1-6).  The case is now before this Court for review.

## ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

On May 13, 2016, plaintiff saw Steven Granberg, M.D., for chronic low back pain.  Dr. Granberg assessed spondylosis without myelopathy or radiculopathy, and other intervertebral disc degeneration in the lumbar region.  (Tr. 296-97.)  Plaintiff also saw Dr. Granberg on July 19, 2016 for chronic low back and hip pain secondary to fibromyalgia.  (Tr. 294-95.)  On October 27, 2016, plaintiff saw Dr. Granberg, for back pain follow-up.  Dr. Granberg assessed primary fibromyalgia.  (Tr. 291-92.)

On September 26, 2016, plaintiff saw Kevin Coleman, M.D., for back pain follow-up. Dr. Coleman assessed other intervertebral disc degeneration in the lumbosacral region, and fibromyalgia.  (Tr. 292-93.)

On December 20, 2016, plaintiff saw David C. Haueisen, M.D., for evaluation of at least moderate right carpal tunnel syndrome, and mild left carpal tunnel syndrome.  Dr. Haueisen assessed moderate right carpal tunnel syndrome with a median nerve motor latency of 5.5, and mild left carpal tunnel syndrome with slight differences in the sensory latency. (Tr. 471.)  On January 4, 2017, plaintiff had a right carpal tunnel syndrome release performed by Dr. Haueisen.  (Tr. 451.)

On March 31, 2017, Mel Moore, M.D., a medical consultant employed by the Social Security Administration, rendered a summary report following a review of documents and without examining plaintiff.  Dr. Moore found that plaintiff would be able to perform the following work-related activities "12 Months After Onset 11/22/2017": occasionally lift and/or carry twenty (20) pounds; frequently lift and/or carry ten pounds; stand and/or walk a total of three hours; sit about six hours; and no manipulative or other limitations.  (Tr.

- 2 -

70-71.)  In his seven-page summary form report in two places, when asked by the form to specifically evaluate medical opinions contained in the material he reviewed, Dr. Moore stated, "There is no indication that there is a medical opinion from any medical source." (Tr. 70, 71.)

On May 9, 2017, plaintiff saw Michael Bottros, M.D., at Washington University in St. Louis Physicians, for low back pain, mid-back pain, and bilateral hip pain.  The low back pain is aggravated by walking, lifting, standing, bending, sitting, turning, temperature changes, stress, cough, sneezing, and straining.  The pain is alleviated by lying down, heat, rest, and medications.  The pain frequently interferes with sleep.  (Tr. 951.)  On physical examination, Dr. Bottros observed tenderness in both shoulders, both deltoids, sacroiliac joints, and the lumbosacral paraspinous muscles.  He diagnosed other chronic pain, fibromyalgia syndrome, muscle spasm, and central sensitization.  (Tr. 953.)

On August 2, 2017, plaintiff saw Dr. Bottros for low back pain that radiated into her hips and buttocks.  The low back pain is aggravated by walking, lifting, standing, bending, sitting, turning, temperature changes, stress, cough, sneezing, and straining.  The pain is relieved by lying down, heat, rest, and medications.  The pain frequently interferes with her sleep.  After physical examination, Dr. Bottros diagnosed other chronic pain, fibromyalgia syndrome, muscle spasm, and central sensitization.  (Tr. 949.)

On September 12 and October 8, 2017, plaintiff saw Dr. Bottros again for low back pain radiating into the hips and buttocks.  The low back pain is aggravated by walking, lifting, standing, bending, sitting, turning, temperature changes, stress, cough, sneezing, and straining.  The pain is alleviated by lying down, heat, rest, and medications.  The pain frequently interferes with sleep.  In September 2017, Dr. Bottros diagnosed other chronic pain, fibromyalgia syndrome, muscle spasm, central sensitization, and sacroiliitis after physical examination.  (Tr. 945.)  In October 2017, Dr. Bottros also diagnosed costochondritis and administered SI joint steroid injections.  (Tr. 941.)  On November 8, 2017, plaintiff saw Dr. Bottros again with low back pain.

On Monday, February 19, 2018, plaintiff called Paul Rutledge, M.D., her primary care physician, complaining of low back pain over the previous weekend. Plaintiff reported that she could not stand the rest of the night and cried "half the night" due to the pain. Dr. Rutledge recommended plaintiff be x-rayed. (Tr. 857.) On February 20, 2018, an x-ray of her lumbar spine showed moderate degenerative changes at L5-S1. (Tr. 916.)

On February 27, 2018, plaintiff saw Dr. Bottros for low back pain. Dr. Bottros diagnosed other chronic pain, fibromyalgia syndrome, muscle spasm, central sensitization, sacroiliitis, and costochondritis. (Tr. 932.)

## **ALJ HEARING**

On October 22, 2018, plaintiff appeared and testified to the following before an ALJ. (Tr. 27-62.) She is married and lives with her husband. (Tr. 33-34.) She last worked at Merritt's in an office position doing computer data entry. (Tr. 35.) After her right carpal tunnel release surgery, she left that job due to fibromyalgia and other illnesses. (Tr.36-37.)

Plaintiff testified she has been experiencing 10/10 pain in her low back since 2015. Also, she has 5/10 pain in her right hand and 8/10 pain in her left hand. (Tr. 37-39.) Any physical activity and stress exacerbate the pain. (Id.) She could lift 5 to 15 pounds, depending upon the day but it would cause her to have knots and tenderness afterward. She could walk a city block but with pain. (Tr. 44-45.) She experiences pain after 30 to 60 minutes of sitting. She needs to rest after 20 to 30 minutes of walking. (Tr. 48-49.)

Plaintiff lives in a two-story house with her bedroom on the second floor. She drives one to three times per week. (Tr. 33-34.) She is able to dress and bathe herself with difficulty and use a chair in the shower. (Tr. 42-43.) She has not been able to do mopping, sweeping, or vacuuming due to her conditions since about two months before the hearing. (Id.) But she can load and unload the dishwasher, take the trash out to the street one or two times a month, and prepare a microwaved lunch. (Tr. 43-44.) Also, after the alleged onset date, she once traveled to Georgia to attend a wedding and went to the zoo there. (Tr. 46-47.)

At the hearing, the ALJ asked the VE whether jobs existed in the national economy for a hypothetical individual with plaintiff's age, educational, work experience, and the following functional capacity: The individual can frequently handle and finger with both hands; can only occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance and stoop; can only occasionally kneel, crouch, and crawl. The person can never work at unprotected heights or around moving mechanical parts. The individual can never perform plaintiff's past work. (Tr. 58.)

The VE testified that such an individual would be able to perform jobs such as folding-machine operator, garment sorter, and routing clerk. (Tr. 61.)

## DECISION OF THE ALJ

On January 3, 2019, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 10-21.) At Step One, the ALJ found that plaintiff had not performed substantial gainful activity since November 23, 2016, the alleged onset date. At Step Two, the ALJ found that plaintiff had the severe impartments of obesity, fibromyalgia, degenerative disc disease of the lumbar spine, right carpal tunnel syndrome following a release procedure, and left carpal tunnel syndrome. At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1.

The ALJ determined that plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: She is limited to bilaterally frequently handling and fingering. She can only occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance and stoop, and only occasionally kneel, crouch, and crawl. She can never work at unprotected heights or around moving mechanical parts. With this RFC, the ALJ at Step Four found plaintiff unable to perform any past relevant work ("PRW"). (Tr. 16-19.)

At Step Five, with the VE testimony, the ALJ concluded there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including folding-machine operator, garment sorter, and routing clerk.

Consequently, the ALJ concluded that plaintiff had not been disabled under the Act. (Tr. 20-21.)

## **GENERAL LEGAL PRINCIPLES**

In reviewing the Commissioner's denial of an application for disability insurance benefits, the Court determines whether the decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The review considers not only the record for the existence of substantial evidence in support of the Commissioner's decision. It also takes into account whatever in the record fairly detracts from that decision. *Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir. 1998). We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pates-Fires,* 564 F.3d at 942.

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to do so. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

Plaintiff makes two primary arguments: (1) the ALJ failed to fully and fairly develop the record; (2) the ALJ failed to properly evaluate her residual functional capacity (RFC). (Doc. 16 at 3.) Plaintiff argues that the record does not contain any medical evidence that addresses her physical ability to function in the workplace and that supports the RFC assessment as of the date of the ALJ's decision, January 3, 2019.[1] Also, plaintiff argues the ALJ failed in her RFC determination to recognize that she was limited to sedentary work and this failure changed the outcome of the case.

### ALJ's Duty to Fully and Fairly Develop the Record

Plaintiff first argues that the ALJ failed to fully and fairly develop the record, because the record does not contain medical evidence that addresses plaintiff's physical

---

[1] In her original Title II, plaintiff claimed to be both physically and mentally disabled. However, she does not challenge the ALJ's analysis of her mental impairments and the ALJ's determination that plaintiff had no severe mental impairments. Therefore, the Court only addresses arguments on plaintiff's physical impairments.

- 7 -

ability to function in the workplace from March 31, 2017, through January 3, 2019. In support, plaintiff argues the only medical opinion in evidence, authored by Dr. Moore on March 31, 2017, predates the hearing before the ALJ by eight months and the ALJ's decision by twenty-one months. During this period significant objective and clinical findings were made which require a medical opinion to determine plaintiff's ability to function in the workplace.

It is well settled that an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). This duty exists independent of the claimant's burden to press her case, because the social disability hearing is a non-adversarial hearing. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). This duty may require an ALJ to obtain additional medical evidence before rendering a decision. *See* 20 C.F.R. § 404.1519a(b), § 416.919a(b). An ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (quoting *Stormo*, 377 F.3d at 806). This issue is decided on a case-by-case basis. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

In the present case, the ALJ assessed plaintiff's ability to function in the workplace using the Disability Determination Explanation authored by Dr. Moore on March 31, 2017, which stated that plaintiff should be limited to a light exertional level, but could walk only 3 hours in an 8-hour workday, without any other limitations. (Tr. 70-71.)

The ALJ erred on relying on Dr. Moore's opinion to assess plaintiff's ability to function in the workplace. Dr. Moore's opinion is a non-examining, non-treating source. Reliance on the opinion of non-treating, non-examining physicians who review the reports of the treating physicians to formulate an opinion of an individual's RFC does not satisfy the ALJ's duty to fairly and fully develop the record. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Id.* (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)). The circumstances of Dr. Moore's report corroborate

this principle. It is a summary report on a form document. In two places Dr. Moore states that he was not provided any medical opinions to consider.

Furthermore, the ALJ failed to assess plaintiff's ability to function in the workplace from March 31, 2017, the date of Dr. Moore's opinion was issued, to January 3, 2019, the date of the ALJ's decision was issued. After Dr. Moore's opinion was issued, plaintiff began treating with pain management at Washington University in St. Louis Physicians for increased back pain. She saw Dr. Bottros for low back pain and sometimes bilateral hip pain from May 9, 2017 through February 27, 2018. On February 20, 2018, plaintiff had an x-ray of the lumbar spine, which revealed moderate degenerative changes at L5-S1. (Tr. 927-53, 916.) There is no medical evidence in the record addressing plaintiff's ability to function in the workplace during this period of time. Moreover, defendant admits that "none of plaintiff's providers submitted an RFC source statement for inclusion in the record." (Doc. 21 at 8.) In other words, the ALJ drew inferences from the medical evidence instead of obtaining relevant medical evidence. *See Combs*, 878 F3d at 646.

Since the ALJ failed to fully and fairly develop the record, the ALJ's decision is not supported by substantial evidence.

### The ALJ's RFC Evaluation

Plaintiff's second argument is that the ALJ erred in evaluating plaintiff's RFC. Plaintiff contends that the ALJ failed to recognize that Dr. Moore's opinion limited her to sedentary work and failed to recognize that Dr. Moore's opinion did not take into account the x-ray of the lumbar spine showing moderate degenerative disk disease and Dr. Bottros' clinical findings. Plaintiff also argues that the ALJ's failure to properly evaluate RFC changed the outcome of the case.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The claimant has the burden to establish her RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The ALJ retains the responsibility of

determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The RFC need only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). There is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)).

In the present case, the ALJ determined that plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except she is limited to bilaterally frequently handling and fingering. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, and stoop, and occasionally kneel, crouch, and crawl. Plaintiff can never work at unprotected heights or around moving mechanical parts. (Tr. 16.)

In reaching the finding on plaintiff's RFC, the ALJ considered plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms, and the medical evidence and other evidence in the record. (Id.) The ALJ discussed plaintiff's subjective allegations of disabling symptoms but decided that plaintiff's statements were not entirely consistent with the record evidence, such as the medical evidence and plaintiff's daily activities. (Tr. 17-18.) The ALJ considered Dr. Moore's opinion, and gave great weight on the portion assessing plaintiff at a light exertional level but gave little weight on the remainder of Dr Moore's opinion, which was inconsistent with the ALJ's determination. (Tr. 19.)

Although, defendant admits "the ALJ made a finding regarding plaintiff's RFC that did not mirror any of the medical opinions in the record," the plaintiff's argument that the ALJ failed to recognize that Dr. Moore's opinion limited plaintiff to sedentary work is

...

unwarranted.  (Doc. 21 at 9.)  An ALJ is not required to base her RFC finding on one specific medical opinion. In the present case, the ALJ explicitly gave little weight to Dr. Moore's opinion except for the part that assessing plaintiff at a light exertional level and gave a reason for it.  (Id.)  Therefore, the mere fact that the ALJ's determination of RFC does not mirror Dr. Moore's opinion does not mean the ALJ's determination is improper.

However, the ALJ erred in evaluating plaintiff's RFC, due to failing to obtain medical evidence addressing plaintiff's ability to function in the workplace from March 31, 2017 to January 3, 2019. While the ALJ retains the authority to determine the RFC, that decision must be supported by some medical evidence. *Perks*, 687 F.3d at 1092. Without medical evidence showing plaintiff's ability to function in the workplace, the ALJ cannot properly evaluate plaintiff's RFC.

The Commissioner's final decision in this case is not supported by substantial evidence, because the ALJ failed to properly evaluate plaintiff's RFC based on medical evidence, and because the ALJ failed to fully and fairly develop the record.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is reversed and remanded for reconsideration of plaintiff's application for disability insurance benefits.  An appropriate Judgment Order is issued herewith.

 /s/ David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 5, 2021.